1
2
3
4

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROL BROWN,<br><br>                    Plaintiff,<br><br>                v.<br><br>BAKER HUGHES INCORPORATED, and DOES 1-10,<br><br>                    Defendants. | **1:05-CV-00461 OWW SMS**<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 15)** |

## I.   INTRODUCTION

This is an insurance coverage dispute governed by the Employee Retirement Income Security Act of 1974 (ERISA).  The underlying dispute concerns coverage under a voluntary accidental death and dismemberment insurance policy (the "Policy") purchased by Milton Hunt through his employer, Defendant Baker Hughes Incorporated ("Baker Hughes").  The Policy contains an exclusion for accidental death resulting from intoxication.

Mr. Hunt died on July 29, 2003 in a single-vehicle car accident.  A toxicology report indicated that Hunt's blood alcohol level was significantly above the legal limit.  Plaintiff Carol Brown, who was involved in a long-term, committed relationship with Mr. Hunt, sought benefits under the Policy.  Coverage was denied on the ground that (1) benefits were not due

**1**

because of the Policy's intoxication and narcotic exclusion; and (2) Plaintiff was not properly designated as Hunt's Beneficiary.

On April 8, 2005, Plaintiff filed this lawsuit seeking review of this benefit determination.  (Doc. 1.)  Defendant now moves for summary judgment on the ground that the initial coverage determination was justified because (1) the Policy's intoxication and narcotic exclusion bars recovery and (2) Brown was not Hunt's beneficiary for purposes of the Policy.  (Doc. 15, filed Jan. 30, 2006.)  Plaintiff opposes the motion.  (Doc. 17, filed Feb. 13, 2006.)

## II.   **FACTUAL BACKGROUND**[1]

A.   **Hunt's Employment Relationship with Baker Hughes; His Relationship with Plaintiff; and His Insurance Coverage Elections and Beneficiary Designations**.

Hunt began his employment with Baker Hughes as a directional driller on May 16, 2003.  Hunt's primary residence was in Three Rivers, California, but his new appointment with Baker Hughes required him to be temporarily stationed in Casper, Wyoming. (Defendant's Exhibit ("DE") C 001.)  Hunt listed his Three Rivers address as his permanent address on his employment paperwork and Baker Hughes sent all paperwork to the California Address.  (*Id.*)

It is undisputed that Brown lived with Hunt in Three Rivers and that the two co-existed as husband and wife for over 17

---

[1]      The relevant facts in this case are essentially undisputed.  Plaintiff filed a "statement of disputed material facts in opposition to summary judgment" (Doc. 18), but disputes only certain legal conclusions reached by Defendant.  Plaintiff also presents her own set of additional material facts, to which defendant has not responded.

**2**

years.  (Plaintiff's initial disclosures ("PID") at 93-94.)  The two co-mingled finances, filed joint tax returns, and maintained joint assets and liabilities.  (*Id.*)  It is also undisputed that Brown was the sole beneficiary of Hunt's personal assets in his will, and is the administrator of his estate.  (DE M 001; DE L 001.)

In 1995, while Hunt was employed by Haliburton Energy Services, Hunt designated Brown in writing as his beneficiary for Haliburton-sponsored life and accidental death and dismemberment insurance policies.  (Plaintiff's Exhibit ("PE") 11 at 120.)  In 1997, Hunt elected on a Haliburton benefits form to provide health insurance coverage for Brown as his "spouse."  On that form, check marks appear next to language reading:  "Relationship Choices: Common-law spouse (Declaration of Common Law Marriage must be attached)."  (*Id.* at 122-23.)  However, there is no declaration of common law marriage in the record.

Hunt began his employment with Baker Hughes in early May 2003.  A May 17, 2003 "statement of benefits" sent by Baker Hughes to Hunt indicates that Hunt elected Medical, Dental, and Vision coverage for himself and his "spouse," along with long term disability and basic life insurance coverage.  In early June 2003, Hunt called Baker Hughes' and elected coverage (for himself only) under the accidental death and dismemberment Policy in the amount of $200,000.  (DE J.)  The record reveals no writing that explicitly designates Brown as his beneficiary under the accidental death and dismemberment policy.  Hunt did, however, designate Brown as his beneficiary for purposes of his pension plan, and listed his status as "married" on a "New Employee Data

Sheet" he filed with Baker Hughes.  (DE C 001.)  Hunt also

indicated that he was married to a non-working spouse on the W-4

form he submitted to Baker Hughes.  (DE D 001.)

**B.   The Accident.**

Hunt was killed in a single-vehicle car accident on July 29,

2003 in Utah.  A police report of the accident indicates that

Hunt was rounding a curve when he lost control of his vehicle.

The vehicle overturned and ejected him.  (DE F at 001-012.)

Hunt's blood was drawn immediately after the accident and a

toxicology screen indicated that his blood alcohol level was 0.26

(more than three times the .08 legal limit in both Utah and

California).  (DE G 001.)

**C.   The Policy.**

The Policy, effective April 1, 2003 through April 1, 2004,

consists of 48 pages that are not consecutively numbered.  The

first six pages consist of introductory material, followed by a

table of contents which indicates that the Policy contains, among

other things, an Insuring Agreement, Declarations, a "Voluntary

Accident Insurance Contract."  The table of contends indicates

that the contract contains "Exclusions," and "Endorsements."  The

table of contents does not indicate page references for the

various listed sections, nor does it provide any detailed

information on the nature of the exclusions and/or the

endorsements.  (*See* DE H at 008.)

//

//

//

//

**4**

1        **1.   General Contract Provisions.**

2     The Insuring Agreement provides:

3        ...This insuring Agreement, together with the Premium Summary, Schedule of Forms, Declarations, Contract, Hazards, and Endorsements, comprise the

4        policy.

5  (DE H 011.)

6     The Contract provides, in pertinent part:

7        *Section I - Coverage*

8        We will pay the applicable **Benefit Amount** if an **Accident** results in a **Loss** not otherwise excluded.  The Accident must result from a covered **Hazard**

9        and occur while this policy is in force.  The **Loss** must occur within one (1) year of the **Accident.**  (DE H 016.)

10                    ***

11        *Section VI - Definitions*

12

13        **Accident or Accidental** - means a sudden, unforseen, and unexpected event which happens by chance, arises from a source external to the **Insured Person,** is independent of illness, disease or other bodily malfunction and is

14        the direct cause of loss.  (DE H 017.)

15                    ***

16        *Section VII - Common Policy Conditions*

17        *Entire Contract And Application*

18        This policy, the **Policyholder's** application and the **Primary Insured Persons'** application, if any, together with the endorsements and other forms listed in the Schedule of Forms, constitutes the entire contract of insurance.

19        (DE H 023)

20  (emphasis in original).

21

22  //

23  //

24  //

25  //

26  //

27  //

28  //

**2.   The Intoxication and Narcotic Exclusion.**

The critical exclusionary language, which is found on the second to last page of the 48-page Policy as an endorsement, provides:

### *Intoxication and Narcotic Exclusion*

The following is added to Section V of the Voluntary Accident Insurance contract, Exclusions:

*Intoxication and Narcotic*

This insurance does not apply to **Accidental Bodily Injury, Accident, Loss of Life**, or other **Loss** caused by or resulting from an **Insured Person** being intoxicated as defined by the laws of the jurisdiction where **the Accidental Bodily Injury**, occurred, or under the influence of any controlled substance unless taken of the advice of a **Physician** and used in accordance with the prescription, at the time of the **Accident**.

All other terms and conditions of the policy remain unchanged.

(DE H 049)(emphasis in original).

**3.   Policy Language Pertaining to Beneficiary Designation and Domestic Partners.**

Two endorsements define the manner by which an insured may designate beneficiaries and the default beneficiaries that will be paid any benefit in the absence of such a designation.  Form 44-02-211-(Ed. 1-01) provides the basic framework:

**Beneficiary**

The policy is hereby amended as follows

(1) Under the Contract Form 44-01-1060 (Ed. 6/96), Section VII Common Policy Conditions is amended by deleting the Beneficiary provision in its entirety and replacing it with the following.

The **Loss of Life** benefit will be paid to the beneficiary designated by the **Insured Person**.  **Loss of Life** benefits payable due to the death of the **Insured Person's** spouse or **Dependent Child** or **Children** will be paid to the **Insured Person**, absent any beneficiary designation by such spouse or Dependent Child or Children.  <u>All beneficiary designations must be in writing and filed with the **Policyholder**</u>. All other Benefit Amounts are paid to the Insured person, unless

6

otherwise directed by the Insured Person or the Insured Person's designee.

If the **Insured Person** has not chose a beneficiary, or if there is no beneficiary alive when the **Insured Person** dies, we will pay the **Benefit Amount** to the first surviving class in the following order:

(a)      the Insured Person's spouse;

(b)      in equal shares to the Insured person's surviving children;

(c)      in equal shares to the Insured Person's surviving parents;

(d)      in equal shares to the Insured Person's surviving brothers and sisters;

(e)      to the Insured Person's estate

All other terms and conditions of the policy remain unchanged.

(DE H 050)(bold emphasis supplied, underlining added).

A second endorsement, Form 44-02-1409 (Ed. 6-96), concerns the designation and benefit entitlements of a Domestic Partner:

### Domestic Partner

Whenever the Term "spouse" is used in the policy, the term includes **Domestic Partner**.

The **Primary Insured Person** and the **Domestic Partner** agree to provide additional information and documentation as may be required to substantiate the relationship and eligibility under the policy.

### Definitions

**Domestic Partner** means a person designated in writing at enrollment by the **Primary Insured Person**, who is at least (18) years of age, and who during the past (12) months:

1)      has been in a committed relationship with the **Primary Insured Person**; and

2)      has been the **Primary Insured Person's** sole spousal equivalent; and

3)      has resided in the same household as the **Primary Insured Person**; and

4)      has been jointly responsible with the **Primary Insured Person** for each other's financial obligations;

and who intends to continue the relationship described above indefinitely. (DE H 042).

D.    **The Summary Plan Description**.

7

1       Baker Hughes' employees are given a Summary Plan Description

2  ("SPD") which provides descriptions of the various benefits

3  offered by Baker Hughes.  The SPD describes the terms of the

4  voluntary accidental death and dismemberment Policy starting on

5  page 211 of the SPD. (DE I 135)  In total, seven pages of text

6  and figures are dedicated to summarizing the Policy.  (SPD 211-

7  217; DE I 135-141.)  The SPD explains how the policy works (SDP

8  213; DE I 137), what losses <u>are</u> covered (SPD 214; DE I 138), and

9  the types of losses that are <u>not</u> covered (SPD 216; DE I 140).

10  Specifically, the SPD lists types of losses that are <u>not</u> covered

11  in a section entitled "What Losses Are Not Covered by Voluntary

12  AS&D Insurance?"  That heading is in large, bold font.  The final

13  of seven bullet points under the heading reads: "Loss caused by

14  or resulting from an Insured Person being Intoxicated or under

15  the influence of any narcotic unless administered on the advice

16  of a Physician."  (DE I 140.)

17       **E.**    **The Division of Claims Administration Between Baker Hughes, Chubb, and Federal**.

18

19       According to the Policy, Baker Hughes is designated as the

20  "policyholder," Chubb is the "producer" and the Federal Insurance

21  Company is the "issuer."  (*See* DE H at 010.)  In the SPD, Baker

22  Hughes designates itself as the "plan administrator" with

23  "discretionary authority to interpret plan provisions, construe

24  unclear terms, determine eligibility for benefits, and otherwise

25  make all decisions and determinations regarding plan

26  administration."  (DE I at 158.)  Baker Hughes asserts that it

27  acted through its fiduciaries Chubb and Federal in denying

28

**8**

Brown's claims.[2]

**F.   Plaintiff's Efforts to Obtain Benefits From Baker Hughes.**

After Milton's death, Baker Hughes disclosed to Plaintiff that two life insurance policies existed.  However, Baker Hughes did not inform Plaintiff directly of the existence of the accidental death and dismemberment policy.  Her counsel discovered the policy in Mr. Hunt's employee file.  Plaintiff asserts that Mr. Hunt may never even have received a copy of the policy or the SPD.

Counsel for Plaintiff submitted a claim directly to Chubb on August 13, 2004 in the form of a letter brief that stated the reasons why the alcohol intoxication exclusion is not plain, clear and conspicuous and why she qualifies as Milton's domestic partner.

On November 23, 2004, Federal responded to Plaintiff's claim, denying it on two separate grounds.  Federal claimed the alcohol intoxication exclusion precluded coverage and that, even if a benefit was due under the policy, Carol's claim to any such benefit could be contested by other potential beneficiaries to the estate because Milton did not designate Carol as his domestic partner in writing at enrollment.

---

[2]    The SPD also provides that "[f]or some of the plans, Baker Hughes has delegated authority to third party administrators to administer benefits claims under the plan. The claim administrator for each benefits plan is designated on page 159.  Subject to Baker Hughes' overall authority as plan administrator, the claim administrator has discretionary authority to interpret plan provisions and determine benefit claims."  (SPD 234; DE I 158.)  The actual designation, which appears to be on page 84, rather than page 159 of the SPD, names Chubb as the administrator for the voluntary accidental death and dismemberment plan.  (SPD 89; DE I 008)

1

### III.   **STANDARD OF REVIEW**

2

   **A.   General Summary Judgment Standard**.

3       Summary judgment is warranted only "if the pleadings,

4  depositions, answers to interrogatories, and admissions on file,

5  together with the affidavits, if any, show that there is no

6  genuine issue as to any material fact."  Fed. R. Civ. P. 56(c);

7  *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

8  Therefore, to defeat a motion for summary judgment, the non-

9  moving party must show (1) that a genuine factual issue exists

10 and (2) that this factual issue is material.  *Id*.  A genuine

11 issue of fact exists when the non-moving party produces evidence

12 on which a reasonable trier of fact could find in its favor

13 viewing the record as a whole in light of the evidentiary burden

14 the law places on that party.  *See Triton Energy Corp. v. Square

15 D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v.

16 Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  Facts are

17 "material" if they "might affect the outcome of the suit under

18 the governing law."  *Campbell*, 138 F.3d at 782 (quoting *Anderson*,

19 477 U.S. at 248).

20      The nonmoving party cannot simply rest on its allegations

21 without any significant probative evidence tending to support the

22 complaint.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

23 2001).

24              [T]he plain language of Rule 56(c) mandates the
                entry of summary judgment, after adequate time
25              for discovery and upon motion, against a party
                who fails to make a showing sufficient to
26              establish the existence of an element essential
                to the party's case, and on which that party
27              will bear the burden of proof at trial.  In such
                a situation, there can be "no genuine issue as
28              to any material fact," since a complete failure

**10**

> of proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986).  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment.  *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

**B.    Summary Judgment in an ERISA Case.**

In a case governed by ERISA, a summary judgment motion is the vehicle for the trial court to review the propriety of the benefit decision.  *Bendixen v. Standard Ins. Co.*, 185 F.3d 939 (9th Cir. 1999).  The parties do not agree on the precise standard of review to be applied to the benefic decision in this case.  Baker Hughes argues for application of the "arbitrary and capricious," or "abuse of discretion," standard.  Plaintiff insists that a less deferential doctrine should be applied.

Determining the appropriate standard of review begins with the general rule that a benefits decision governed by ERISA is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989);

*Jebian v. Hewlett-Packard Co. Employee Benefits Organiz. Income Protection Plan*, 349 F.3d 1098, 1102 (9th Cir. 2003).  If the plan administrator is granted such discretionary authority, a reviewing court must apply an "abuse of discretion standard." *Firestone*, 489 U.S. at 115.  However, even where a Plain properly designates discretionary authority, there are circumstances in which a less deferential standard should be applied.

## IV.  <u>DISCUSSION</u>

Plaintiff's complaint sets forth two causes of action: the first, brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeks a declaration that Plaintiff is entitled to benefits under the Policy; the second seeks recovery of benefits under ERISA.  Baker Hughes moves for summary judgment on both of Plaintiff's claims.

Plaintiff filed an opposition, but failed to file her own cross-motion for summary judgment.  She requests, however, that her opposition be <u>deemed</u> a cross-motion for summary judgment. Defendant strenuously objects to consideration of Plaintiff's opposition as a cross-motion, arguing that her failure to do so stands in direct contravention of the court's scheduling order in this case.  In theory, a court may *sua sponte* grant summary judgment on a purely legal issue even in the absence of a cross-motion, but "great care must be exercised to assure that original movant has had adequate opportunity to show that there is genuine issue and that his or her opponent is not entitled to judgment as matter of law."  *See Kassbaum v. Steppenwolf Productions*, 236 F.3d 487, 494-95 (9th Cir. 2000).  Here, however, it is not

12

necessary to apply *Kassbaum*, because <u>Defendants</u> motion will be granted.

### A.   **Plaintiff's Standing to Sue**.

As a threshold matter, Baker Hughes argues that "Brown lacks standing to bring this action as she is neither the participant nor beneficiary of the Policy at issue," citing 29 U.S.C. § 1132(a)(1) for the proposition that only the participants or beneficiaries of an ERISA governed plan are "empowered to bring a civil action" to enforce their rights.  But "[t]his reasoning begs the question: If [the plaintiff] is a beneficiary, as she asserts, then she does have standing." *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 979 (7th Cir. 1989). Plaintiff has standing to test the question of her status as a beneficiary in this case.

### B.   **The Appropriate Standard of Review**.

Plaintiff raises a second threshold issue -- the applicable standard of review.  A benefits decision governed by ERISA is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115; *Jebian,* 349 F.3d at 1102.  If the plan administrator is grated such discretionary authority, a reviewing court must apply an "abuse of discretion standard."  *Firestone*, 489 U.S. at 115.  An ERISA plan administrator may abuse its discretion if it "render[s] decisions without any explanation, or construe[s] provisions of the plan in a way that conflicts with the plain language of the plan."  *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472 (9th Cir. 1993).  The appropriate inquiry "is not

into whose interpretation of the plan documents [i.e., the administrator's or the district court's] is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Saffle, v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458 (9th Cir. 1996).  An ERISA plan administrator may also abuse its discretion if it relies on clearly erroneous findings of fact in making benefit determinations.  *Taft*, 9 F.3d at 1472.

Here, it is undisputed that Baker Hughes designated itself as the "plan administrator" under the Policy, and assigned to Chubb/Federal the discretion to interpret plan provisions and determine eligibility for benefits.  But, as noted above, even where a Plan properly designates discretionary authority, there are several exceptions to the "abuse of discretion" standard.

First, it is not disputed that "[t[he degree of judicial deference associated with this standard of review may...be affected by factors such as <u>conflict of interest</u>."  *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Techn., Inc.*, 125 F.3d 794, 797-98 (9th Cir. 1997)(emphasis added).  An apparent conflict may exist where claims are both funded and administered by the insurer.  *See Gaines v. Sargent Fletcher*, 329 F. Supp. 2d 1198, 1212 (C.D. Cal. 2004).  Such a situation appears to exist here, where Baker Hughes both funds and administers the plan.  However, the mere presence of an apparent conflict is not enough on its own.  *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1322 (9th Cir. 1995).

[The Ninth Circuit's] traditional abuse of discretion

**14**

review is not altered in the absence of facts indicating that the conflicting interest caused a serious breach of the plan administrator's fiduciary duty to...the plan beneficiary. Instead..we must review the decisions of an apparently conflicted employer- or insurer-fiduciary under the traditional abuse of discretion standard unless it appears that the conflict may have influenced the decision. To make such a showing, the affected beneficiary must come forward with "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Id*. If the beneficiary satisfies that burden, our review remains for abuse of discretion, but it becomes "less deferential."

*Lang*, 125 F.3d 797-98. Examples of such "material, probative evidence" include: (1) "inconsistencies in the plan administrator's reasons" for the denial of benefits, Lang, 125 F.3d at 799; (2) a plan administrator's failure to provide the claimant a full and fair review; and/or (3) the administrator's failure to follow plan procedures, *Fredrich v. Intel*, 181 F.3d 1105, 1110 (9th Cir. 1999).

Plaintiff's arguments do not fall neatly within any of these categories. As evidence of a conflict, Plaintiff alleges that Baker Hughes did not exercise its "overall authority" because the denial of Brown's claim was actually issued by Chubb/Federal. (Doc. 17 at 17.) But, Baker Hughes rejoins that it simply designated Chubb/Federal as its fiduciary and delegated its discretionary authority to Chubb/Federal. (DE I 158.)[3]

---

[3]     Brown raises several other unpersuasive arguments in support of her theory that a serious conflict exists here. She suggests that it was inappropriate for Chubb/Federal, rather than Baker Hughes itself, to deny her claim. But, Baker Hughes designated Chubb/Federal as its fiduciary for such purposes. A denial by Chubb/Federal is sufficient. Plaintiff also suggests that Baker Hughes did not issue its denial within 90 days of the

1      Plaintiff next points out that Baker Hughes' failed to

2 inform her of the existence of the Chubb policy.  Plaintiff

3 complains that "[t]here was no system to ensure Milton's estate

4 or his beneficiaries be provided with all plan documents [and]

5 [i]f there was, the system was not followed." (Doc. 17 at 17.)

6 But, Baker Hughes maintains that it was under no obligation to

7 inform Plaintiff of the existence of the policy, because

8 Plaintiff was neither Hunt's spouse nor his designated

9 beneficiary.  Plaintiff points to no legal authority in support

10 of the proposition that such a failure constitutes evidence of a

11 <u>conflict of interest</u>. In sum, Plaintiff has not established that

12 the standard of review should be heightened on conflict of

13 interest grounds.

14      Alternatively, Plaintiff points to a line of pre-*Firestone*

15 cases which hold that a plan administrator's "erroneous

16 application of law" is an independent basis for overturning the

17 benefits decision.  *See Malhiot v. S. Cal. Retail Clerks Union,*

18 735 F.2d 1133,1135 (9th Cir. 1984); *Ellenburg v. Brockway*, Inc.

19 _____

20 claim, as required by ERISA, 29 C.F.R. 2560.503-1(f)(1),(3).

21 Plaintiff, however, presents no concrete evidence to rebut Baker
   Hughes' assertion that it did in fact deny her claim within 84

22 days.  (Doc. 23, Reply, at 5-6.)  Brown also argues that Baker
   Hughes "delegates and then tries to insulate itself" from

23 liability for the actions of third party administrators like
   Chubb.  It is undeniable and common knowledge that employers

24 utilize third party administrators who are experts in the
   administration of ERISA benefit plans.  Again, Plaintiff points

25 to no authority suggesting that this constitutes a breach of
   fiduciary duty.  Finally, Plaintiff argues that Baker Hughes did

26 not provide her with a review or appeal policy as required by
   ERISA.  This is not accurate.  The SPD explains how one may

27 appeal a benefits determination.  Plaintiff does not suggest how

28 this notice or process is inadequate.

**16**

763 F.2d 1091, 1093 (1985).[4]  Plaintiff maintains that
Chubb/Federal applied the incorrect standard to determine the
enforceability of the intoxication/narcotics exclusion.
Specifically, Plaintiff suggests that the appropriate analysis is
to examine the "interrelationship of [the policy's] parts and the
surrounding circumstances," a standard drawn from *Middlesex Mut.*
*Ins. Co. v. Bright*, 106 Cal. App. 3d 282, 292 (1980).  *Middlesex*,
in turn, draws this rule from *Gray v. Zurich*, 65 Cal. 2d 263, 273
(1966), in which the California Supreme Court found that an
exclusionary clause was not conspicuous, in part because it
"appears only after a long and complicated page of fine print,
and is itself in fine print," finding "its relation to the
remaining clauses of the policy and its effect is surely not
'plain and clear.'"  However, both *Middlesex* and *Gray* recognize
that "overriding consideration [is] that the interpretation of
the insurance policy must be pursued in light of the insureds'
reasonable expectations."  *Middlesex*, 106 Cal. App. 3d at 292
(citing *Gray*, 65 Cal. 2d at 270.)

     Although Chubb/Federal's denial letter may not have
articulated the standard in the exact terms Plaintiff suggests,
Chubb/Federal applied the appropriate law and performed an
appropriate analysis.  Critically, Chubb/Federal discussed *Haynes*
*v. Farmers Ins. Exch.*, 32 Cal. 4th 1198 (2004) in considerable

---

     [4]   Plaintiff also cited *Allen v. Shalala*, 48 F.3d 456 (9th
Cir. 1995), during oral argument, in which the Ninth Circuit
reiterated the well-established principle that a <u>district court</u>
may abuse its discretion if it "does not apply the correct law."
But, *Allen* was not an ERISA case nor did it address the standard
of review to be applied to a benefits decision made by an
administrator.  *Allen* is inapposite.

detail.  In *Haynes*, the California Supreme court examined the
placement of exclusionary language vis-a-vis other policy
provisions, the form and placement of headings used to alert the
insured, and other policy language that suggested exactly the
opposite of the exclusionary language.  *Id*. at 1205-08.
Chubb/Federal concluded that *Haynes* was distinguishable because
"the Intoxication And Narcotics exclusion is contained on its
own, separate endorsement bearing a large, bolded, italicized
descriptive heading."  (*See* Denial Letter at 8-9, attached to
Doc. 19-4.)  Chubb/Federal applied the correct standard of law.

Even if a heightened standard of review was called for here,
it is not clear that it would make a difference in practical
terms.  As discussed below, Chubb/Federal's determination as to
the enforceability of the intoxication exclusion is correct and
survives scrutiny under any standard of review, even a de novo
"totality of the circumstances" analysis.


### C.   **The Merits of the Underlying Benefit Decision**.

Baker Hughes' argues that it is entitled to summary judgment
because (1) the intoxication and narcotic exclusion is valid and
enforceable because it is "plain, clear, and conspicuous"; and
(2) Federal properly invoked the exclusion because Hunt was
intoxicated at the time of his death.  Alternatively, Baker
Hughes argues that Brown does not qualify as Hunt's Beneficiary
under the policy.


#### 1.   **The Validity and Enforceability of the Narcotics Exclusion**.

A plan administrator may abuse its discretion by unreasonably interpreting an insurance policy.  Plaintiff asserts that Baker Hughes, through Chubb/Federal, has done just this, by misapplying the law to find that the narcotics exclusion is "plain, clear, and conspicuous."

The applicable legal standard is drawn from California state law, which is relevant to interpretation of ERISA-governed insurance contracts.  *See Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir. 1994).  The Ninth Circuit has specifically adopted California's doctrine of reasonable expectation as "a principle of uniform federal common law informing interpretation of ERISA-governed insurance contracts."  *Id.* (affirming a district court's "legal determination" that a policy's exclusion was not clear, plain and conspicuous enough to negate layman's objectively reasonable expectation of coverage).  The Ninth Circuit describes the doctrine as follows:

> In general, courts will protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.

*Id.*  Specifically, courts applying this doctrine examine whether any exclusions are "clear, plain, and conspicuous enough to negate [a] layman['s] []objectively reasonable expectations of coverage."  If not, the exclusion is unenforceable.  *Id.* at 386-87.[5]  Here, Plaintiff essentially argues that Chubb/Federal

---

[5]    The California Supreme Court applies this rule in a similar manner.

> [A]n insurer cannot escape its basic duty to insure by

**19**

interpreted the Policy unreasonably (thereby abusing its discretion) by improperly applying the "reasonable expectations doctrine" to reach the conclusion that the intoxication and narcotics exclusion is valid and enforceable.

The mere presence of the exclusion in an endorsement, as opposed to placement in the main contract, is not dispositive. The use of endorsements to set forth exclusions is accepted as standard practice in California. *See Burak v. Gen. Am. Life Ins. Co.*, 836 F.2d 1287 (10th Cir. 1988)(applying California Law).

However, the <u>inconspicuous placement</u> of an endorsement excluding coverage may render that exclusion unenforceable.[6]  In *Fields v. Blue Shield of Cal.*, 163 Cal. App. 3d 570 (1980), the challenged limitation of coverage was placed, "not in the limitation or exclusion section, but at the end of benefit granting provisions." *Id.* at 579.  Therefore, the insurer failed to provide "conspicuous notice in an expected place." *Id.*

_____

> means of an exclusionary clause that is unclear. As we have declared time and again any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language. The exclusionary clause must be conspicuous, plain and clear.

*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (internal quotations and citations omitted).

[6]   Plaintiff asserts that application of the reasonable expectations doctrine must proceed via an examination of "the totality of the policy."  Plaintiff however cites no cases which directly support the application of a "totality of the circumstances" analysis.  Rather, both parties point to federal and California cases that suggest the inconspicuous placement of exclusions may render them unenforceable.

In *Haynes*, the California Supreme Court found unenforceable limiting language which appeared "on the policy's 10th page [] as the second of four paragraphs under the heading 'Other Insurance....'" 32 Cal. 4th at 1205.  The *Haynes* court reasoned that "[t]here is nothing in the heading to alert a reader that it limits permissive user coverage, nor anything in the section to attract a reader's attention to the limiting language." *Id*.

Similarly, inconspicuous placement of exclusionary language in a summary plan document provided to employees may also be grounds for invalidating an exclusion.  For example, in *Saltarelli*, the Ninth Circuit examined whether a 43 page summary plan description effectively informed the beneficiaries of a purported exclusion for pre-existing medical conditions.  35 F.3d at 385.  The factual summary from *Saltarelli* provides a helpful overview:

> The preamble [to the summary plan description] states that the Plan is subject to all terms, provisions and conditions recited on the following pages. Among the [] plan provisions is an exclusion for "pre-existing conditions."  However, an insured reading the table of contents of the plan summary would find no heading for this critically important item. The only arguably relevant heading apparent from the table of contents, "Eligibility Rules: Employee Eligibility and Effective Date," contains no reference to it at all. The "Medical Care Benefits" chapter in the body of the document does reveal a subsection entitled "Exclusions and Limitations," but the pre-existing conditions exclusion receives no mention here either. Instead, the exclusion can be found only in the midst of the "Definitions" chapter. Even then, it requires a coordinated reading of three separate definitions: those for "Pre-Existing Condition," "Illness," and "Injury."

*Id*.  Based on these facts, the district court in *Saltarelli* found that the "purported exclusion for pre-existing conditions is not conspicuous enough to attract the attention of a reasonable

1    layman." *Id*.   The Ninth Circuit affirmed.  *Id*. at 388.

2         Here, the placement of the exclusionary language in the

3    Policy itself is not designed as the most conspicuous provision.

4    The 48-page policy has a table of contents which indicates that

5    the Policy contains, among other things "Exclusions," and

6    "Endorsements."  The table of contents does not indicate page

7    references for the Exclusions or Endorsements, nor does it

8    specify that additional exclusionary language may be contained

9    within the Endorsements.  (*See* DE H at 008.)  On the other hand,

10   the intoxication and narcotics exclusion itself is set off by

11   itself on a single endorsement page and bears a bold-face heading

12   to catch the reader's attention.

### Intoxication and Narcotic Exclusion

The following is added to Section V of the Voluntary Accident
Insurance contract, Exclusions:

*Intoxication and Narcotic*

This insurance does not apply to **Accidental Bodily Injury,
Accident, Loss of Life**, or other **Loss** caused by or resulting from an
**Insured Person** being intoxicated as defined by the laws of the
jurisdiction where **the Accidental Bodily Injury**, occurred, or under
the influence of any controlled substance unless taken of the advice of
a **Physician** and used in accordance with the prescription, at the time
of the **Accident**.

All other terms and conditions of the policy remain unchanged.

21   (DE H 049)(emphasis as in original).  This particular endorsement

22   is located on the second to last page of the 48-page policy and

23   is nowhere mentioned in the table of contents or introductory

24   materials.[7]

25

26        [7]   Plaintiff's alternative argument that the language of

27   the intoxication exclusion is not sufficiently clear is
     unpersuasive.  (*See* Doc. 17 at 13.)  She points to nothing in the

28   language that is confusing or ambiguous.

If this case concerned only the Policy itself, it might be a close call as to whether it puts an insured person adequately on notice of the existence of the intoxication exclusion.  However, the SPD, given to all Baker Hughes Employees, is also relevant to the "plain, clear, and conspicuous" inquiry.  The Ninth Circuit has indicated that the language contained in the SPD should actually be given <u>more</u> weight than the policy language itself.  *Atwood*, 45 F.3d at 1321, considered a case in which the SPD and the plan <u>conflicted</u> in their descriptions of the circumstances which may result in a denial of benefits.  The Ninth Circuit held that the SPD controls over the plan, pointing out that "ERISA requires that the SPD explain the 'circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.'"  *Id.* (quoting 29 U.S.C. § 1022(b)).

In straightforward language, the SPD explains how the policy works (SPD 213; DE I 137), what losses <u>are</u> covered (SPD 214; DE I 138), and the types of losses that are <u>not</u> covered (SPD 216; DE I 140).  Specifically, the SPD lists types of losses that are <u>not</u> covered in a section entitled "What Losses Are Not Covered by Voluntary AS&D Insurance?"  That heading is in large, bold font.  The final of seven bullet points under the heading reads: "Loss cause by or resulting from an Insured Person being Intoxicated or under the influence of any narcotic unless administered on the advice of a Physician."  (DE I 140.)  The SPD plainly, clearly, and conspicuously informs the reader of the intoxication

exclusion.[8]

In sum, Chubb/Federal's determination that the intoxication/narcotics exclusion is valid and enforceable is not unreasonable and is entitled to deference.  Even under a de novo standard of review, Chubb/Federal's determination would stand, because it is a correct application of the law to the facts of this case.  Brown does not separately challenge Chubb/Federal's factual determination that the intoxication exclusion bars recovery for Mr. Hunt's accident.  Therefore, Chubb/Federal is entitled to summary judgment on the ground that no benefits are due under the policy.

### D.  **Plaintiff's Status as a Beneficiary Under the Policy.**

Defendant argues that, even if benefits were due under the policy, Chubb/Federal properly concluded that Plaintiff would not be entitled to benefits because she was not designated in writing as a beneficiary, nor does she otherwise qualify as a beneficiary under the Domestic Partner provision.  Plaintiff contends that she was properly designated in writing as a beneficiary and, in the alternative, that she should be deemed Hunt's "Domestic Partner" for purposes of the policy.

---

[8]    Plaintiff suggests that Defendant has failed to establish that Hunt was ever given a copy of the SPD, and points to 29 U.S.C. 1022(a), which requires that "[a] summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries."  Baker Hughes maintains that it's workplace is an entirely "paperless environment" and that the SPD was readily available to all employees on the internet.  Plaintiff presents no legal authority that suggests this mechanism fails to satisfy section 1022(a)'s "shall be furnished" requirement.

### 1.   Defendants' Argument that Plaintiff Cannot Have Her Cake and Eat it Too.

Defendant argues that Plaintiff should not be permitted to argue for the invalidity of the narcotics exclusion endorsement while, at the same time, arguing for the validity and applicability of the Domestic Relations endorsement.  This argument is totally misplaced.  The reasonable expectations doctrine _is_ a one-way street that allows the insured to challenge the validity of exclusionary clauses.  The doctrine has no applicability to non-exclusionary policy language.

### 2.   Did Hunt Properly Designate Plaintiff as His Beneficiary In Writing Under the Policy?

Defendant asserts that Chubb/Federal properly determined that Hunt had not designated Plaintiff as a beneficiary for purposes of the Policy.  The pertinent policy language provides:

**Beneficiary**

The policy is hereby amended as follows

(1) Under the Contract Form 44-01-1060 (Ed. 6/96), Section VII Common Policy Conditions is amended by deleting the Beneficiary provision in its entirety and replacing it with the following.

The **Loss of Life** benefit will be paid to the beneficiary designated by the **Insured Person**.  **Loss of Life** benefits payable due to the death of the **Insured Person's** spouse or **Dependent Child** or **Children** will be paid to the **Insured Person**, absent any beneficiary designation by such spouse or Dependent Child or Children.  All beneficiary designations must be in writing and filed with the **Policyholder**.

All other Benefit Amounts are paid to the Insured person, unless otherwise directed by the Insured Person or the Insured Person's designee.

If the **Insured Person** has not chose a beneficiary, or if there is no beneficiary alive when the **Insured Person** dies, we will pay the **Benefit Amount** to the first surviiing class in the following order:

(a)      the Insured Person's spouse;

(b)      in equal shares to the Insured person's surviving children;

25

1              (c)    in equal shares to the Insured Person's surviving parents;

2              (d)    in equal shares to the Insured Person's surviving brothers and sisters;

3              (e)    to the Insured Person's estate

4              All other terms and conditions of the policy remain unchanged.

5  (DE H 0050.)

6       Plaintiff suggests that Chubb/Federal reads the writing

7  requirements in these two provisions too narrowly and that any

8  writing "filed with the Policyholder" indicating Hunt's intent to

9  designate Plaintiff as his beneficiary would suffice under the

10 plain language of the Policy.  Specifically, Plaintiff points out

11 that Hunt designated Plaintiff as his beneficiary for purposes of

12 Baker Hughes' pension benefit plan and indicated that he and

13 Plaintiff were "married" on Baker Hughes' "Employee Data Sheet."

14 Plaintiff was also designated as Hunt's beneficiary in Hunt's

15 will.

16       In support of her assertion, Plaintiff cites *Liberty Life*

17 *Assurance Co. of Boston v. Kennedy*, 358 F.3d 1295, 1298 (11th

18 Cir. 2004).  In that case, the Eleventh Circuit considered a

19 beneficiary designation dispute in the context of an ERISA life

20 insurance plan held by Clint Kennedy.  In 1988, while the insured

21 was married to his first wife, Barbara, Mr. Kennedy named his

22 then-wife Barbara as the sole beneficiary of the insurance policy

23 on an approved form.  In 1991, when the couple divorced, they

24 executed a settlement agreement in which Mr. Kennedy agreed to

25 maintain his employer-sponsored life insurance, with Barbara

26 Kennedy named as trustee for their children as beneficiaries of

27 50% of the total death benefits.  However, the agreement allowed

28 Mr. Kennedy to reduce the children's share to 18.75% each if he

**26**

remarried.  The divorce agreement <u>did not</u> obligate Mr. Kennedy to keep his first wife as a beneficiary.  In 1993, after getting re-married, Mr. Kennedy executed a will that included the following provision:

> ...I hereby give and bequeath all the proceeds of life insurance provided to me by my employer to the following persons:
>
> (a) To my wife Mary Beth Kennedy, one-fourth (25%) outright;
>
> (b) To each of the two (2) children of my first marriage, Bridget and Presley, or their living lineal descendants, per stirpes, three-sixteenths (18.75%) respectively;
>
> (c) To each of the two (2) children of my second marriage, Katherine and William, or their living lineal descendants, per stirpes, three-sixteenths (18.75%) respectively; provided

The Eleventh Circuit agreed with the district court that the will could serve as an alternative beneficiary designation, after closely examining the language in the policy's beneficiary designation provision:

> **Change of Beneficiary.** An employee may change the Beneficiary. Any change requires acceptable written notice to the Policyholder. The notice <u>can</u> be on forms approved by the Policyholder. The change shall be filed with the Company and will take effect from the date the employee signed the notice. If the notice is not signed, it will be void. <u>The employee does not have to be living at the time of such filing</u>.

*Liberty Life Assurance Co. of Boston v. Kennedy*, 228 F. Supp. 2d 1367, 1374 (N.D. Ga. 2004)(emphasis added).  The Eleventh Circuit noted the use of the permissive language "<u>can</u> be on forms approved by the policy holder" rather than "shall be," reasoning that this permitted the use of alternative forms.  The Kennedy court also emphasized the language allowing posthumous

designations.  This, the court reasoned, suggested that a will

would be an appropriate manner of designating a beneficiary.

Here, in contrast, the policy language is almost totally

devoid of detail with respect to the manner by which a

designation must be made.  Under normal circumstances, a

reviewing court would examine whether Chubb/Federal's conclusion

that Plaintiff was not designated as the beneficiary in writing

is supported by the record.  The problem here is that both

parties appear to be reading more into Chubb/Federal's

beneficiary ruling than is warranted.  The November 23, 2004

letter relies almost exclusively on the exclusionary clause in

determining that Plaintiff is not entitled to benefits under the

Policy.  The following two paragraphs of the fourteen-page letter

address the beneficiary issues:

> Notwithstanding the application of the Intoxication And
> Narcotics exclusion, Federal furthermore cannot
> conclude as a matter of law that Ms. Brown qualifies as
> a Domestic Partner and thereby a Beneficiary under the
> policy.  Mr. Hunt did not designate Ms. Brown as a
> Domestic Partner "in writing at enrollment," and the
> issue is subject to challenge by Mr. Hunt's children.
> If Ms. Brown does not qualify as a Domestic Partner,
> and thereby the primary Beneficiary, then Mr. Hunt's
> children would be the Beneficiaries and they would
> share equally the proceeds of the policy.

> We conclude that even if coverage existed, Ms. Brown
> may not qualify as a Beneficiary under the policy as
> the issue could be contested by the children of Mr.
> Hunt.  If coverage otherwise existed, Federal would be
> obligated to interplead the policy benefits and allow
> the interested parties to litigate the issue.

(PE 2 at 8 (emphasis added).)  Given the state of the record on

these issues and the fact that Chubb/Federal's denial is

supportable on other grounds, in is neither necessary or

appropriate to "review" Chubb/Federal's alternative reasoning for

reasonableness.  The same problem arises with respect to the

"Domestic Partner" determination.  Chubb/Federal has yet to actually deny Plaintiff's status as Hunt's Domestic Partner. They merely suggested that they might need to interplead other parties prior to making such a determination.  Because there is no basis for coverage based upon the narcotics and intoxication exclusion and because the domestic partner/written designation issue was not thoroughly briefed or argued by the parties, the district court declines to issue a ruling on this alternative ground.

## V.   CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED**

Dated: May 17, 2006                    /s/ OLIVER W. WANGER

                                **OLIVER W. WANGER**
                        **United States District Judge**